UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CPLACE SPRINGHILL SNF, LLC | CIVIL ACTION NO. 14-3139 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| SYLVIA MARY MATTHEWS BURWELL, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

On October 29, 2014, Plaintiff Cplace Springhill SNF, LLC, d/b/a Carrington Place of Springhill ("Carrington Place"), filed a Verified Complaint for Injunctive Relief and a Motion for Temporary Restraining Order and Preliminary Injunction. See Record Documents 1 & 5. Defendant Sylvia Burwell, Secretary of the United States Department of Health and Human Services ("the Secretary"), responded to the Motion for Temporary Restraining Order and Preliminary Injunction and also filed a Motion to Dismiss, arguing this Court lacked subject matter jurisdiction. See Record Document 15. Carrington Place opposed the Motion to Dismiss. See Record Document 21.

The matter was set for hearing on January 23, 2015. See Record Document 19. On January 12, 2015, the hearing was upset and discovery was stayed. See Record Document 30. For the reasons which follow, the Secretary's Motion to Dismiss (Record Document 15) is **GRANTED**, as this Court lacks subject matter jurisdiction to entertain Carrington Place's claims for relief.

**I.     Background.**

Carrington Place is certified by Medicare as a skilled nursing facility. See Record Document 1 at ¶ 1. It is the only skilled nursing facility in Springhill, Webster Parish, Louisiana. See id. Webster Parish is designated by HHS as a medically underserved area.

See id. Carrington Place has participated in Medicare since 2006. See id. at ¶ 36.

Carrington Place filed suit to compel the Secretary and United States Department of Health and Human Services ("HHS") to lift the Medicare payment suspension and prepayment review pending completion of all administrative appeals. See generally Record Document 1. HHS is the federal agency which contains the Centers for Medicare & Medicaid Services ("CMS"). See id. at ¶ 3. CMS is the agency that is responsible for the administration of the Medicare and Medicaid programs and, more specifically, the actions at issue in this case. See id.

CMS enters into contracts with private entities that assist in performing Medicare program activities. See id. at ¶ 16, citing 42 U.S.C. §§ 1395u; 1395ddd; 1395kk-1. CMS's contractors include Medicare Administrative Contractors and Zone Program Integrity Contractors ("ZPICs"). See id. at ¶ 16. ZPICs are authorized to perform reviews to prevent inappropriate expenditures and overpayments. See id. at ¶ 17, citing 42 C.F.R. § 421. ZPICs can suspend Medicare payments to enrolled providers. See id. at ¶ 17, citing 42 C.F.R. § 405.371(a). During a payment suspension, valid payments to the Medicare provider are frozen and held in a suspension account. See id. at ¶ 17. The suspension may last until the investigation is resolved. See id. at ¶ 17, citing 42 C.F.R. § 405.372(d)(3). ZPICs are also authorized to perform prepayment reviews. See id. at ¶ 18.

AdvanceMed Corporation ("AdvanceMed") is the ZPIC for Medicare Part A services covering Louisiana and performs payment suspensions and prepayment reviews on behalf of HHS. See id. at ¶ 20. This case involves HHS's suspension pursuant to 42 C.F.R. § 405.371(a)(1) of Medicare payments owed to Carrington Place for skilled nursing facility services. See id. at ¶ 21. The suspension in this matter, which was effective July 25, 2014,

was based "on reliable information that an overpayment exists or that payments to be made may not be correct." Id. According to Carrington Place, "the reliable information appears to be the ZPIC's finding that Carrington Place billed therapy services at a level beyond what was medically necessary for treatment of Medicare beneficiaries." Id. HHS has not made an initial determination or given notice of an overpayment. See id. at ¶ 42. Thus, Carrington Place is unable to initiate the administrative appeal process. See id.

As late as October 27, 2014, HHS refused to lift the payment suspension or prepayment review. See id. at ¶ 49. At all times relevant to this matter, Carrington Place has continued to provide skilled nursing services to Medicare beneficiaries, payment for which is currently due and owing to Carrington Place. See id. at ¶ 50.

On October 20, 2014, Carrington Place filed this civil action alleging that HHS had and was continuing to violate its right to due process of law under the Fifth Amendment. See id. at ¶¶ 59-63. Carrington Place further seeks an injunction against HHS from continuing the payment suspension and prepayment review. See id. at ¶ 74.

The Court will now address the Secretary's Motion to Dismiss, as the motion raises jurisdictional grounds and should be ruled on before any more time and resources are expended by the parties and the Court.

**II.    Legal Standard.**

Federal Rule of Civil Procedure Rule 12(b)(1) permits the dismissal of an action for the lack of subject matter jurisdiction. "If a federal court determines at any time that it lacks subject matter jurisdiction, it must dismiss the action." F.R.C.P. 12(h)(3). Because federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, they lack the power to adjudicate claims. See Stockman v. Fed. Election Comm'n, 138

F.3d 144, 151 (5th Cir.1998). Therefore, the party seeking to invoke the jurisdiction of a federal court carries "the burden of proving subject matter jurisdiction by a preponderance of the evidence." Vantage Trailers, Inc. v. Beall Corp., 567 F.3d 745, 748 (5th Cir.2009); see also Stockman, 138 F.3d at 151. A Rule 12(b)(1) motion should be granted only "if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." Castro v. U.S., 560 F.3d 381, 386 (5th Cir. 2009). The Court may decide the jurisdictional motion based on "(1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts." Lane v. Halliburton, 529 F.3d 548, 557 (5th Cir. 2008). Here, the Secretary contends that the jurisdictional question may be decided based on the complaint alone.

### III. Statutory and Regulatory Framework.

####    A.    Sovereign Immunity

It is well settled that the United States is immune from suit except where its sovereign immunity has been expressly waived, and that waivers of sovereign immunity are to be strictly construed. See Lehman v. Nakshian, 453 U.S. 156, 160-161, 101 S.Ct. 2698, 2701-2702 (1981). Where a limited waiver of sovereign immunity has been provided by Congress, the waiver must be "construed strictly in favor of the sovereign." McMahon v. U.S., 342 U.S. 25, 27, 72 S.Ct. 17, 19 (1951).

Congress gave the Secretary the power to suspend payments. See 42 U.S.C. § 1395hh; 42 C.F.R. §§ 405.371-376. Congress then granted providers who were dissatisfied with the Secretary's determination a right to an administrative review process to challenge those findings. See 42 U.S.C. § 1395ff. If a provider is dissatisfied with the

results of the administrative process, Congress then waives sovereign immunity and allows the provider to seek judicial review in federal court. See id.; 42 U.S.C. § 405(g).

      B.      <u>The Medicare Act and Regulations</u>

The Medicare statute establishes a federal program of health insurance for the elderly and disabled. See 42 U.S.C. § 1395, *et seq*. The Secretary of HHS has delegated the authority to administer the Medicare program to CMS. CMS is authorized to utilize contractors to administer the Medicare program. See 42 U.S.C. §§ 1395h & 1395u; 42 C.F.R. § 421.5. In this case, AdvanceMed is the contractor that assisted in managing the details of Carrington Place's Medicare reimbursements. AdvanceMed is bound by the Medicare statute, the regulations, and the guidelines issued by CMS.

Federal regulations authorize the temporary withholding of medicare payments to a provider where there is reliable information that a provider received improper payments. See 42 C.F.R. §§ 405.317-376. Under the regulations, CMS or its contractor may suspend the payments if there is reliable information that an overpayment exists or that payments to be made to a provider may not be correct. See 42 C.F.R. § 405.371(a)(1). Because the withholding is a temporary measure to place payments on hold while necessary facts are gathered and evaluated to determine the amount of an overpayment, it is not an agency determination that is subject to judicial review. See 42 C.F.R. § 405.375(c) ("A determination made under paragraph (a) of this section is not an initial determination and is not appealable.").

Advance notice of intent to suspend payments is not required if CMS determines that Medicare Trust Fund monies would be harmed by giving such notice. See 42 C.F.R. § 405.372(a)(3), (4). If prior notice is not required, then once the suspension is effectuated,

the contractor must afford the provider an opportunity to submit a rebuttal statement as to why the suspension should be removed. See 42 C.F.R. § 405.372(b)(2).

The duration of a suspension of payments is limited initially to 180 days. See 42 C.F.R. § 405.372(d)(1). The period of suspension may be extended under specified conditions. See 42 C.F.R. § 405.372(d)(2). During the suspension period, the contractor processes all claims received and the allowable amounts are credited to the provider's account. Yet, the allowable amounts are set aside, as if in escrow, until the investigation is completed. After the investigation is closed, the escrow funds are turned over to the provider if it is determined that there is no overpayment. See 42 C.F.R. § 405.372. If an overpayment is established, then the contractor recovers the overpayment by recouping the withheld funds. See 42 C.F.R. § 405.373.

The provider is not entitled to immediate judicial review when there is an overpayment determination. Instead, the Secretary has promulgated regulations setting forth an extensive statutory and administrative system of appeals available to parties that are dissatisfied with certain determinations made by CMS or its contractor. See 42 U.S.C. § 1395ff; 42 C.F.R. Part 405, Subpart I. Once an initial determination is made on a claim, a beneficiary or a provider has the right to appeal Medicare coverage and payment decisions. There are five levels of appeal:

1. A redetermination of the initial claim decision (42 C.F.R. § 405.940, *et seq.*);

2. A reconsideration conducted by a Qualified Independent Contractor (42 C.F.R. § 405.960, *et seq.*);

3. A hearing before an Administrative Law Judge (42 C.F.R. §§ 405.1002(a)(2), 405.1006(b));

    4.     Review by the Medicare Appeals Council (42 C.F.R. § 405.1102(a)); and

    5.     Judicial review in a United States District Court (42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. § 405.1136; 42 C.F.R. § 405.1130).

A court's jurisdiction to review a claim under the Medicare Act is limited by 42 U.S.C. § 405(h), which provides:

> The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

Section 405(h) was made applicable to the Medicare Act by 42 U.S.C. § 1395ii. Under 42 U.S.C. § 1395ff(b)(1)(A), judicial review of claims arising under the Medicare Act is available only after a "final decision" of the Secretary.

## IV. Analysis.

Carrington Place has asserted jurisdiction under 42 U.S.C. § 405(g) (the Medicare Statute), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1651 (All Writs Acts). Carrington Place acknowledges that providers generally must exhaust their administrative appeals before seeking judicial review in federal court. Yet, here, Carrington Place alleges that the exhaustion of administrative remedies requirement should be waived in this matter because the "administrative remedies are virtually non-existent, there is a complete preclusion of, and a serious practical roadblock to, administrative remedies." Record Document 21 at 10.[1] The Court will now consider the doctrine of sovereign immunity and

---

[1] Carrington Place contends that the administrative appeals process is completely broken. See Record Document 5 at 7. This argument is based in large part on a

each of the purported jurisdictional bases raised by Carrington Place.

    A.    <u>Sovereign Immunity</u>

The Secretary contends that this Court is barred by sovereign immunity from granting the relief that Carrington Place seeks. More specifically, the Secretary argues that "by asking this Court to order [CMS] to continue making Medicare payments to [Carrington Place], [Carrington Place] is attempting to bypass Congress' carefully constructed statutory and administrative scheme for reviewing decision of the Secretary." The Secretary maintains that Carrington Place has failed to present any legal authority to overcome the jurisdictional bar of sovereign immunity.

The Medicare statute and regulatory scheme provide a limited waiver of sovereign immunity only after the completion of an administrative review process. <u>See</u> 42 U.S.C. § 405(g). This waiver must be "construed strictly in favor of the sovereign." <u>McMahon</u>, 342 U.S. 25 at 27, 72 S.Ct. at 19. As set forth below, this Court believes that Carrington Place has not demonstrated a final decision by the Secretary such that Congress' limited waiver of sovereign immunity allowing judicial review has been triggered in this case. <u>See</u> 42 U.S.C. § 405(g).

    B.    <u>The Medicare Act and Regulations</u>

Section 405(g) mandates that an individual or entity may obtain judicial review only after the Secretary has rendered a final decision. <u>See</u> <u>Heckler v. Ringer</u>, 466 U.S. 602, 104 S.Ct. 2013 (1984). The Supreme Court explained in <u>Weinberger v. Salfi</u>, 422 U.S. 749, 95

---

December 24, 203 memorandum from HHS's Office of Medicare Hearings and Appeals. <u>See id.</u>; <u>see also</u> Record Document 1, Exhibit A. The memorandum notified parties in pending appeals of a moratorium on assignment of appeals to ALJs for at least two years. <u>See id.</u>

S.Ct. 2457 (1975), that the rule under Section 405(g) requiring an aggrieved party to pursue all available administrative remedies before filing suit is not merely a judicially developed doctrine of exhaustion. See id. at 766. Rather, the Supreme Court has held that a "final decision" is a statutorily specified jurisdictional prerequisite to suit. Id. at 764.

Carrington Place does not dispute that "neither Medicare payments suspensions nor imposition of prepayment review are immediately subject to administrative appeal because they do not constitute an initial determination on a claim for benefits." Record Document 21 at 10. However, Carrington Place argues that this is an instance where "federal court jurisdiction must be immediately available" due to unique circumstances. Id. Namely, it argues that "subject matter jurisdiction exists in this case because the Medicare Act's administrative appeal process is completely backlogged" and "[it] is precluded as a practical matter from recovering suspension amounts through the administrative appeal process." Id. Simply put, Carrington Place contends that "exhaustion of the administrative appeal process is futile." Id. at 13.

While the Court is sympathetic to Carrington Place's circumstance, the backlog in the administrative appeal process is not so egregious as to warrant intervention at this time. See Am. Hosp. Ass'n v. Burwell, No. 14-851(JEB), 2014 WL 7205335, at *1 (D.D.C. Dec. 18, 2014). This Court draws a distinction between complete and total preclusion of review versus simple postponement of review and finds that any possible delay in this matter does not warrant circumvention of the administrative appeal process as a whole. Moreover, this Court believes that the delay in the administrative process can be lessened by escalation provisions enacted by Congress and set forth in the Medicare Act. See 42 U.S.C. §§ 1395ff(d)(3(a) & (B). These provisions address the possibility of undue delay and are in

place for providers such as Carrington Place to expedite review of any denied claims. Carrington Place's argument that escalation is inadequate because it would lose its right to an administrative hearing is also unpersuasive, namely because it is free to request oral argument before the Medicare Appeals Council. See 42 C.F.R. § 405.1124.

In this case, Carrington Place has wholly failed to exhaust its administrative remedies. The granting of jurisdiction to hear Carrington Place's claims would result in precisely the type of interference that the binding case law cautions against. See Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 12-13, 120 S.Ct. 1084, 1093 (2000). Thus, because of the clear statutory exhaustion requirement embodied in the Medicare Act, and in light of precedents such as Heckler, 466 U.S. 602, 104 S.Ct. 2013, this Court finds that it has no subject matter jurisdiction over this matter.

    C.    28 U.S.C. § 1331

The Court finds that federal question jurisdiction (28 U.S.C. § 1331) also does not provide a basis for Carrington Place to obtain jurisdiction in this Court. Title 42, United States Code, Section 405(h) specifically provides that no action arising under the Medicare Act may be brought under 28 U.S.C. § 1331. See Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457. The Supreme Court has explained that "arising under," as used in Section 405(h), should be broadly construed to include claims that are "inextricably intertwined" with benefit determinations. See Heckler, 466 U.S. at 622-624, 104 S.Ct. at 2025-2027; see also Weinberger, 422 U.S. at 760-761, 95 S.Ct. at 2464 (also included are claims for which the "standing and substantive basis" arise under the Medicare Act).

In Affiliated Professional Home Health Care Agency v. Shalala, 164 F.3d 282, 285-286 (5th Cir. 1999), the Fifth Circuit explained that an inquiry into a provider's claimed

violation of its due process and equal protection rights would require the court to "immerse itself in those regulations and make a factual determination" as to whether the provider was actually in compliance. Accordingly, the Fifth Circuit concluded that such claims were not collateral.

In Illinois Council, 529 U.S. at 10, 120 S.Ct. at 1092, the Supreme Court stated that § 405(h) plainly bars §1331 review in cases "irrespective of whether the individual challenges the agency's denial on evidentiary, rule-related, statutory, constitutional, or other legal grounds." Thus, because the claims in this matter would require this Court to review the merits of the Secretary's decision to suspend Medicare payments and impose prepayment review, Carrington Place's claims are clearly not collateral and they must be channeled through the administrative review process.

D.      28 U.S.C. § 1361 (All Writs Act)

Carrington Place also asserts jurisdiction under the All Writs Act, 28 U.S.C. § 1651. The Court is not so convinced. While the All Writs Act may provide the basis for authority to issue an injunction, it does not provide a basis of jurisdiction. See V.N.A. of Greater Tift County, Inc. v. Heckler, 711 F.2d 1020, 1024 n.5 (11th Cir. 1983). An instructive case on this issue is Landmark Medical Ctr. v. Bowen, et al., 700 F.Supp. 350 (W.D. Tex. 1988), where the court concluded that it was inappropriate to exercise its All Writs Acts' authority to enjoin CMS from terminating a Texas hospital's provider agreement. The plaintiff in Landmark alleged that CMS violated its due process rights as guaranteed by the Fifth Amendment and acted arbitrarily and capriciously in terminating its provider agreement. The court concluded that the plaintiff's claims were not collateral to the substantive issue of its termination; thus, the plaintiff was required to exhaust its administrative remedies.

**V.     Conclusion.**

In conclusion, the Court is not in the position to provide a fix for the current backlog referenced by Carrington Place. Again, while the Court is sympathetic to Carrington Place's circumstance, the backlog in the administrative appeal process is not so egregious as to warrant circumvention of the administrative appeals process. See <u>Am. Hosp. Ass'n</u>, 2014 WL 7205335, at *1. While it is true that Carrington Place may experience financial hardship while its claims proceed through the administrative process, such concerns are not material to this Court's analysis of subject matter jurisdiction. See <u>Griego v. Leavitt</u>, No. 07-1708, 2008 WL 2200052, *4 (N.D. Tex. May 16, 2008). Carrington Place has no basis for subject matter jurisdiction and this matter must be dismissed.

Therefore, based on the foregoing analysis, the Secretary's Motion to Dismiss (Record Document 15) is **GRANTED** and this matter is **DISMISSED** because this Court lacks subject matter jurisdiction to entertain Carrington Place's claims for relief.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith. The Clerk of Court is directed to close this case.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 21st day of April, 2015.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE